**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Steve Nguyen, et al.,

                Plaintiffs,

    v.

Shelter Mutual Insurance Co.,

                Defendant.

Case No. 2:24-cv-00014-CDS-BNW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (ECF NO. 15)**

Before the Court is Plaintiffs' motion to compel, in which Plaintiffs seek disclosure of materials that Defendant claims are privileged. ECF No. 15. Defendant responded at ECF No. 20, and Plaintiffs replied at ECF No. 22. This Court held a hearing on the motion, and it agreed to conduct an *in camera* review of the disputed materials. ECF No. 26. Having examined the contested documents and communications, this Court finds that the attorney-client and work-product privileges apply to only some of the materials listed in Defendant's second-amended privilege log. Accordingly, this Court grants in part and denies in part Plaintiffs' motion consistent with the below.

## I.    BACKGROUND

This case arises from a car accident in 2019, in which a non-party rear-ended Plaintiff Steve Nguyen's car, injuring him and his passenger, Plaintiff Lan Ung. ECF No. 1-1 at 3. The non-party had an insurance policy covering bodily injury up to $25,000 per person and $50,000 per incident. *Id.* at 4. The insurance company paid Plaintiffs' the policy's limits. *Id.*

At the time of the accident, Plaintiff Nguyen had an underinsured/uninsured motorist policy through Defendant Shelter Mutual Insurance Company. *Id.* This policy covered bodily injury up to $500,000 per person and $1,000,000 per incident. *Id.* In September of 2021, Plaintiff Nguyen alleged medical bills in the amount of $117,389.99 and future treatment in the amount of $1,506,239.38. *Id.* Plaintiff Ung alleged medical bills in the amount of $73,644.96 and future treatment in the amount of $394,320.91 or $2,072,489.13, depending on the treatment plan. *Id.* In

January of 2022, Plaintiffs updated their medical bills to $121,379.61 for Plaintiff Nguyen and $116,581.18 for Plaintiff Ung. *Id.* at 5. The future treatment amounts did not change.

Defendant received Plaintiffs' demand on January 11, 2022, and it hired attorney Steve Canfield a few days later. ECF No. 20 at 4–5. With the help of Mr. Canfield, Defendant hired a medical expert to conduct independent medical examinations of Plaintiffs and review their medical records. *Id.* According to Defendant, Mr. Canfield also completed examinations under oath of each Plaintiff. *Id.*

In June of 2022, Defendant offered to settle Plaintiffs' claims for $96,379.61 (Plaintiff Nguyen) and $91,581.18 (Plaintiff Ung). ECF No. 1-1 at 5. Plaintiffs declined the offer. A year later, Plaintiffs requested that Defendant reevaluate their claims based on updated medical records and supplemental expert reports. *Id.* at 6. In response, Defendant maintained that their evaluation had not changed. *Id.* In December of 2023, Plaintiffs filed suit against Defendant for breach of contract, breach of good faith and fair dealing, and violation of Nevada's Unfair Claims Practices Act. *Id.* at 7–13.

Plaintiffs served their first set of written discovery in February of 2024. ECF No. 15 at 3. Defendant responded and objected to several of the interrogatories and requests for production on privilege grounds. The parties met and conferred several times, and Defendant amended its privilege log twice. However, the parties still dispute certain communications and documents. Accordingly, Plaintiffs filed the present motion to compel in which they seek materials listed in Defendant's second-amended privilege log that they believe are not protected by either the attorney-client or work-product privileges.

This Court held a hearing on the motion on November 14, 2024. ECF No. 26. The Court heard argument from both parties, and it narrowed the issues to whether the materials listed in Defendant's second-amended privilege log were protected by either the attorney-client or work-product privileges.[1] The parties agreed that an *in camera* review of the disputed documents was

___

[1] In their reply, Plaintiffs argued that Defendants did not meet their burden regarding relevancy and proportionality. However, at the hearing, Plaintiffs did not stand on these arguments. As such, the Court only examines Plaintiffs' arguments regarding the attorney-client and work-product privileges.

necessary, and the Court acquiesced. A few weeks later, Defendant produced the contested materials—consisting of 1,144 pages—for review. Having examined the materials in light of applicable law, the Court grants in part and denies in part Plaintiffs' motion, as discussed in further detail below.

## II.    DISCUSSION

### A.  The Parties' Arguments

Plaintiffs move this Court to order that no privilege applies to the communications and documents in Defendant's second-amended privilege log and to compel those materials. ECF No. 15 at 1. Regarding the attorney-client privilege, Plaintiffs argue that this privilege never attached to the materials because Mr. Canfield was not acting as an attorney but rather as a claims adjuster. *Id.* at 11; ECF No. 22 at 6. Plaintiffs further argue that, even if the attorney-client privilege attached to the materials, such privilege was impliedly waived when Defendant asserted that it did not act in bad faith. ECF No. 15 at 10. Regarding the work-product privilege, Plaintiffs argue that the materials are not protected opinion-work product nor ordinary-work product and, alternatively, that the exceptions to these doctrines apply here. *Id.* at 13.

Defendant responds that the attorney-client privilege applies to the materials because it hired Mr. Canfield to provide legal advice and the materials reflect such advice. ECF No. 20 at 12. At the hearing, Defendant argued that Plaintiffs had not shown it impliedly waived the attorney-client privilege because they did not show that (1) they had a reasonably viable bad-faith claim and (2) that allowing the privilege would deny them information vital to their defense. Finally, Defendant responds that the materials are protected under the work-product doctrine because they were prepared in anticipation of litigation. *Id.*

As mentioned above, both parties agreed that this Court should conduct an *in camera* review of the at-issue documents, and this Court concurred. After reviewing the parties' arguments and the relevant caselaw, this Court adopted the following analytical approach for its *in camera* review.

First, did the attorney-client privilege attach to the materials? Second, for those materials in which the attorney-client privilege did attach, did Defendant nonetheless impliedly waive the

privilege under the *Hearn* test? Third, for those materials in which the attorney-client privilege did not attach or was impliedly waived, were the materials prepared in anticipation of litigation such that they constituted work product? Fourth, for those materials that constituted work product, were they opinion-work product? And fifth, for those materials that constituted work product and opinion-work product, did Plaintiffs show that the applicable exception applied such that the materials should nevertheless be disclosed? The Court answers each of these questions below.

### B. Attachment of Attorney-Client Privilege

In federal cases based on diversity jurisdiction, courts apply state law to claims of attorney-client privilege. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995); *Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-APG-GWF, 2017 WL 2695292, at *8–9 (D. Nev. June 22, 2017). Under Nevada law, the attorney-client privilege applies to confidential communications between an attorney and client made for the purpose of facilitating the rendition of professional legal services. *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 399 P.3d 334, 341 (Nev. 2017); *see also* Nev. Rev. Stat. § 49.095. Nevada courts follow a majority of other courts in finding that privileges "should be interpreted and applied narrowly." *Canarelli v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 464 P.3d 114, 120 (Nev. 2020).

When asserting the attorney-client privilege, the burden rests on the defendant. The defendant must show that "the evidence is privileged and that the defendant has not waived that privilege." *Gibbs v. State*, 543 P.3d 1185, 1188 (Nev. 2024) (citing *Canarelli*, 464 P.3d at 120). Courts in this district have found that parties usually attempt to satisfy this burden through a privilege log. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 627 (D. Nev. 2013). Here, Defendant submitted its second-amended privilege log. ECF No. 15-10.

Determining whether the attorney-client privilege applies to dual-purpose communications, that is, communications that implicate both legal and business concerns, can be particularly challenging. This challenge extends to the insurance context, where counsel often wears two hats: one as claims handler and one as attorney. *See Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL 3149362, at *12 n.7 (D.

Nev. Nov. 1, 2006). The line between an attorney engaging in routine claim handling versus rendering legal advice is often unclear. *See id.* Because the Nevada Supreme Court has not provided guidance on how to demarcate claim handling from legal advice in the context of attorney-client privilege, this Court looks to decisions in the Ninth Circuit and this district. *See Phillips*, 290 F.R.D. at 627 (citing *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)) ("In the absence of controlling law, the court must look to decisional law in the Ninth Circuit, district courts in the Ninth Circuit, and in some circumstances, other circuits and district courts outside of the Ninth Circuit to provide a framework for approaching these issues.").

In *In re Grand Jury*, the Ninth Circuit squarely addressed the issue of when the attorney-client privilege applies to dual-purpose communications. 23 F.4th 1088, 1090 (9th Cir. 2021). Considering the privilege's purpose of "providing a sanctuary for candid communications about any legal matter," the Ninth Circuit held that courts should apply the primary-purpose test to decide when the attorney-client privilege protects dual-purpose communications. *Id.* at 1092–93. Under this test, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *Id.* at 1091. The Ninth Circuit observed that the "natural implication of this inquiry is that a dual-purpose communication can only have a single 'primary' purpose." *Id.*

As an aside, this Court finds it necessary to address Plaintiffs' statement that "[t]he Nevada Supreme Court further instructs that the privilege does not attach where counsel is providing business advice or conducting 'investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer.'" ECF No. 15 at 9–10 (citing *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 627–28, 630 (D. Nev. 2013) (citing *In re Allen*, 106 F.3d 582 (4th Cir. 1997)). None of the cases Plaintiffs cite support this proposition, much less support that the Nevada Supreme Court follows this rule. The *Phillips* case does not contain the language Plaintiffs quote, nor does it mention the dual-role of attorneys in insurance cases.

Additionally, Plaintiffs' quotation from *In re Allen* is taken out of context. Plaintiffs' statement suggests that the attorney-client privilege cannot attach to communications in which the attorney is acting as a claims adjuster, even if the primary purpose of the communication is legal

advice. In *In re Allen*, the Fourth Circuit found that the district court erred because it relied on a similar proposition, that is, because the district court "apparently believed that if a client retains an attorney to perform the 'rudimentary' task of conducting an investigation, that assignment can never constitute legal work." 106. F.3d at 601. As the circuit court explained:

> Courts have consistently recognized that investigation may be an important part of an attorney's legal services to a client . . . Of course, not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege. For example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer. ***But even in these cases the courts did not suggest, let alone hold, that investigation can never constitute legal work.*** Quite the contrary, they carefully instructed that only "[t]o the extent" attorneys acted as claims adjusters, a "pure, ordinary business function," was their investigation "outside the scope of the asserted privileges."

*Id.* at 602 (emphasis added) (internal citations omitted).

In sum, this Court applies the following rules to its *in camera* review of documents. No attorney-client privilege will attach to communications and documents in which the attorney acts only as a claims adjuster. However, the attorney-client privilege will attach to communications and documents in which the attorney acts purely in his capacity as a lawyer by "facilitating the rendition of professional legal services." *See* Nev. Rev. Stat. § 49.095. For communications and documents in which the attorney is acting in a dual role as a claims adjuster and attorney, the Court will consider the primary purpose of the document or communication consistent with the Ninth Circuit's decision in *In re Grand Jury*. 23 F.4th 1088 (9th Cir. 2021).

Here, the majority of the documents are not protected by the attorney-client privilege because they consist of materials Plaintiffs already possess or facts that are not independently protected by the attorney-client privilege.[2] Still, the Court finds that some of the documents, particularly emails between Mr. Canfield and/or his paralegal and Defendant, are protected because the primary purpose of the communications is legal advice. First, the Court finds that the following groups of documents are not privileged:

---

[2] To note, Defendant provided documents SMIC 003256–003270 and SMIC 005633–005695 for *in camera* review but these materials are not included in the second-amended privilege log. So, the Court disregards them.

- Group 1: Materials already in Plaintiffs' possession. These materials include SMIC 003312–003336 (a copy of the insurance policy and amendatory endorsement), SMIC 005702–5794, SMIC 005895–005954,  SMIC 006309–006379, SMIC 006385–006460 (Dr. Schifini's medical reports and Dr. Campbell's rebuttal medical reports), SMIC 004598–005169 (Plaintiffs' own medical records), SMIC 006476–6488 (copy of the Complaint in this case), SMIC 005626–005627, 006380 (materials sent to Plaintiffs). These materials are not attorney-client privileged because they are not confidential communications as Defendant purposefully shared them with Plaintiffs. *See* Nev. Rev. Stat. §§ 49.055, 49.095, 49.385.

- Group 2: Materials that are discoverable facts, not confidential communications. These materials include SMIC 003292–003306 (ISO Claim Search Report), SMIC 003338–003349 (Dr. Schifini's curriculum vitae, fee schedule, and testimony list), SMIC 003351–003392 (discovery commissioner's report and recommendations regarding a party's motion to quash subpoena duces tecum as to Dr. Schifini and a transcript of a deposition in which Dr. Schifini testified), SMIC 003350, 003393 (copies of Dr. Schifini's W-9 forms). The fact that these materials may be attached to protected attorney-client communications does not automatically insulate them under the privilege. As the Supreme Court of Nevada has noted, "only *communications* and not *facts* are subject to the privilege. Thus, relevant facts known by a corporate employee of any status in the corporation would be discoverable even if such facts were related to the corporate attorney as part of the employee's communication with counsel." *Wardleigh v. Second Jud. Dist. Ct. In & For Cnty. of Washoe*, 891 P.2d 1180, 1184 (Nev. 1995) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). Applied here, these materials are not protected by the attorney-client merely because they are attached to Defendant's communications with Mr. Canfield, absent an independent basis for privilege. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 644–45 (D. Nev. 2013). Having reviewed these materials, this Court finds that they contain no confidential

communications between Mr. Canfield and Defendant, let alone communications related to rendering legal advice. Therefore, the documents do not meet the requirements under NRS § 49.095. Even though these materials are not attorney-client privileged, some of the documents contain personal-data identifiers that Defendant will need to redact. *See* LR IC 6-1.

- Group 3: Materials in which the primary purpose of the communications is claims handling. SMIC 003271, 003275–003277 (claim file descriptions of attorney-client communications), SMIC 003283, 003337, 004596–004597, 005628–005631, 005696–005697 (emails containing confidential communications between Mr. Canfield and Defendant), SMIC 003394–003398, SMIC 004592, SMIC 005170–005172, SMIC 005632, SMIC 005893–005894, SMIC 006100–006103, SMIC 006308, SMIC 006384 (emails containing confidential communications between paralegal and Defendant). For example, SMIC 003275–003277 contains entries in the claim file that detail communications between Mr. Canfield and Defendant about when Plaintiffs will provide their rebuttal medical expert reports. SMIC 004596 is a letter from Mr. Canfield's paralegal to Defendant listing the medical records the firm had obtained. SMIC 005894 is a similar letter that provides Plaintiffs' rebuttal medical expert reports to Defendant. These documents relate to medical reports and medical records associated with claims handling and do not contain legal advice regarding those reports and records. Therefore, the primary purpose of the communications was claims handling as opposed to professional legal services. Some of the materials, like SMIC 003394–3398 contain personal-data identifiers that Defendant will need to redact. *See* LR IC 6-1.

Second, the Court finds that the following documents are protected by the attorney-client privilege: SMIC 003284–003291, SMIC 003307–003311, SMIC 005698–005701, SMIC 005890–005892, SMIC 005955–005958,SMIC 006381–006383, and SMIC 006461–006475. These documents are email chains containing communications between Mr. Canfield and/or his paralegal and Defendant in which the primary purpose of the communication is "facilitating the

rendition of professional legal services." *See* Nev. Rev. Stat. § 49.095 (protecting communications between client and representative of the lawyer); *Id.* § 49.095 (defining "representative of the lawyer" as a person employed by the lawyer to assist in the rendition of professional legal services). In contrast to the group three documents (above), the primary purpose of these documents is legal advice. For example, SMIC 003284 is an email chain between Mr. Canfield and Defendant in which the primary purpose of the document is to convey legal advice to Defendant regarding Plaintiffs' time-limit demand. And SMIC 006382, for example, is another email chain between Mr. Canfield and Defendant in which Mr. Canfield addresses Plaintiffs' rebuttal medical expert report. The primary purpose of that document is for Mr. Canfield to provide legal advice regarding the rebuttal report. Because these materials meet the requirements under NRS § 49.095 and because their primary purpose is to provide and/or obtain legal advice, the Court finds that these are protected by the attorney-client privilege.

Third, the Court finds that the following documents generally are not protected by the attorney-client privilege but that certain portions of the documents are protected. SMIC 003272–003274 and SMIC 003278–003282 contain portions of the claim file with entries that describe confidential communications between Defendant and Mr. Canfield. The Court has redacted the entries in these portions of the claim file in which it finds that the primary purpose of the described communications was to provide or obtain legal advice. To be clear, these communications differ from those in SMIC 003271 and SMIC 003275–003277 because, as explained above, the primary purpose of those attorney-client communications was claims handling. But here, the descriptions reflect attorney-client communications in which the primary purpose was to provide/obtain legal advice about settlement.

## C. Waiver of Attorney-Client Privilege

Parties may impliedly waive the attorney-client privilege in bad faith actions. *Wood v. Nautilus Ins. Co.*, No. 2:17-cv-02393-MMD-DJA, 2021 WL 5415330, at *2 (D. Nev. Nov. 18, 2021). "As a general rule, a party impliedly waives the attorney-client privilege when it expressly relies on the advice of counsel as a defense to a claim against it." *Id.* (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992)). A party may impliedly waive this

1    privilege even if it does not expressly rely on the advice-of-counsel defense but rather asserts that

2    it did not act in bad faith because such assertion "makes the insurer's coverage advice

3    dispositively important." *Id.* (citing *Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-

4    APG-GWF, 2017 WL 2695292 (D. Nev. June 22, 2017)). At the hearing, Defendant did not

5    object to this Court's finding that Mr. Canfield's advice is dispositively important to this case

6    because Defendant asserted that it did not act in bad faith. Accordingly, the Court turns to the

7    *Hearn* test.

8         In determining whether a party has impliedly waived the privilege, courts in this district

9    apply the *Hearn* test. *See Spargo*, 2017 WL 2695292, at *4–5 (predicting that the Nevada

10   Supreme Court would apply the *Hearn* test to decide whether a party waives the attorney-client

11   privilege in bad faith actions). Absent a definitive ruling from the Nevada Supreme Court on the

12   issue, this Court agrees with the reasoning in *Spargo* and will apply the *Hearn* test. *See id.* Under

13   the *Hearn* test, an implied waiver of the attorney-client privilege occurs when:

14

15         (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by
           the asserting party; (2) through this affirmative act, the asserting party put the protected
16         information at issue by making it relevant to the case; and (3) application of the privilege
           would have denied the opposing party access to information vital to his defense.

17   *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

18         Additionally, the *Hearn* court stated that "[a] substantial showing of merit to plaintiff's

19   case must be made before a court should apply the exception to the attorney-client privilege

20   defined herein." *Id.* at 582. In other words, the plaintiff must show it has a "reasonably viable bad

21   faith claim." *Torgerson v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-cv-00452-LRH-CSD, 2023

22   WL 6807111, at *4 (D. Nev. Oct. 16, 2023). Finally, the Ninth Circuit has stated: "In *Hearn*, an

23   overarching consideration is whether allowing the privilege to protect against disclosure of the

24   information would be 'manifestly unfair' to the opposing party." *Home Indemnity Co. v. Lane*

25   *Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).

26         Here, neither party disputes application of the *Hearn* test. Further, at the hearing this

27   Court clarified that Defendant only disputes the third factor in *Hearn* and whether Plaintiffs have

28

made a substantial showing of bad faith. Accordingly, this Court focuses its analysis on these two points.

First, Plaintiffs have met their burden to show that they have a "reasonably viable" bad faith claim. *Torgerson*, 2023 WL 6807111, at *4. At the hearing, and in their reply brief, Plaintiffs argued that they have a made a substantial showing of merit as to their bad-faith claim because the claim file contains no evidence that Defendant engaged in an analysis or evaluation of the claimed injuries. ECF No. 22 at 6. Plaintiffs further argue that if any analysis were done, it appears to have been done by Mr. Canfield, acting as a claims adjuster. *Id.* To support this argument Plaintiffs rely on the report of a claims-practices expert, Stephen L. Strzelec. *Id.* In the reply, Plaintiffs attached Mr. Strzelec's fifty-page expert report, which the Court has reviewed. ECF No. 22-2. Relying on language in several emails from Mr. Canfield, as well as the deposition testimony of Defendant's 30(b)(6) witness, Kathleen Warren, Mr. Strzelec argues that Mr. Canfield elected to be involved in the case as a claims handler instead of as an attorney. *Id.* at 17.

Plaintiffs further argue that they have met their substantial showing because the deposition testimony of Ms. Warren makes it apparent that Defendant "had essentially delegated its duty to evaluate Plaintiffs' claim to coverage counsel and the medical expert that their coverage counsel retained." ECF No. 15 at 6. For example, Plaintiffs cite the following portions of Ms. Warren's deposition:

> Q:  And what is it, at that point, that caused you to believe you may need to contact outside counsel?
> A. I was brought into the file with the man having a projection, you know, into the life plan and the millions. We're just trying to figure out exactly what was going on. And so that would have been -- would have been brought in -- I would have been brought in on that. And just to get somebody else's eyes on it and a little bit of counsel on how best to review it.
> . . .
> Q. Is it Shelter's position that Dr. Schifini, as a pain management specialist and anesthesiologist, is qualified to rebut the opinions of a board certified radiologist?
> A. We would have relied on our outside counsel, depending on each case individually, as to what type of doctor might be best to analyze what's going on and look at all the records.

ECF No. 15-8 at 33:6–16, 59:2–9. Defendant argues that it "properly sought legal advice and work to conduct a thorough investigation into Plaintiffs' claims before paying out the policy" and

that Ms. Warren's testimony supports this. At this point in the case, the Court is persuaded that

Plaintiffs have shown that their bad-faith claim is at least "reasonably viable." In his report, Mr.

Strzelec included evidence that shows that Mr. Canfield acted, in part, as a claims handler in the

case. Mr. Strzelec further opined that the claim file is devoid of an adequate evaluation and

analysis of Plaintiffs' claims. And while the testimony of Ms. Warren is not particularly strong

evidence of bad faith, when coupled with Mr. Strzelec's expert opinion, Plaintiffs have put forth

enough evidence to show that their bad-faith claim is reasonably viable.

Second, Plaintiffs have not met their burden to show that application of the attorney-client

privilege would deny them information vital to their defense. Plaintiffs generally argue that the

attorney-client privileged communications are vital to their defense because those

communications would support their bad-faith claim. In their complaint, Plaintiffs allege that

Defendant failed and/or refused to investigate and evaluate their claims and to make a reasonable

offer. ECF No. 1-1 at 9. But having reviewed all the disputed materials in which Defendant

asserts the attorney-client privilege, the Court cannot say that the materials support Plaintiffs'

allegations, much less that the materials are vital to Plaintiffs' defense. So, because Plaintiffs have

not met their burden under factor three of the *Hearn* test, the Court will not find that Defendant

impliedly waived its attorney-client privilege. The communications that this Court identified as

privileged will remain so.

### D. Work-Product Doctrine

Unlike the attorney-client privilege, federal law governs the work-product privilege in

diversity suits. *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir.

1998); *see also In re California Pub. Utilities Comm'n*, 892 F.2d 778, 778–81 (9th Cir. 1989)

(applying federal law to discussion of work-product in a diversity action). Under Federal Rule of

Civil Procedure 26, discovery is protected work product if it is "prepared in anticipation of

litigation or for trial by or for another party or its representative." Fed. R. Civ. Pro. 26(b)(3)(A).

As the Ninth Circuit has stated, "the primary purpose of the work product rule is to 'prevent

exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto.*

*Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. United States District*

*Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). Material is protected under this doctrine when "it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). The party claiming the work-product privilege has the burden of proving that the doctrine applies to the at-issue communications or documents. *Spargo v. State Farm Fire & Cas. Co.*, No. 216-cv-03036-APG-GWF, 2017 WL 2695292, at *2 (D. Nev. June 22, 2017) (citing *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1083–84 (C.D. Cal. 2009)).

Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. The requesting party may discover ordinary work product if it shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* 26(b)(3)(A)(ii). But "if the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(B). The Ninth Circuit has held that a requesting party may only discover opinion work product if it shows that the "mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

In insurance cases involving bad-faith claims, the "strategy, mental impressions, and opinions of [the insurer's claim adjusters or agents] concerning the handling of the claim are directly at issue." *Id.* at 577 (citing *Reavis v. Metropolitan Property & Liability Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987) (emphasis added)). And, if the information is not available elsewhere, the plaintiff may be able to establish a compelling need for the material. *Id.* Importantly, however, the "right to discover the opinions and mental impressions of the *insurer's claims adjusters* does not mean, however, that she is entitled to obtain the confidential opinions, mental impressions or legal theories of the *insurer's attorney*." *Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-APG-GWF, 2017 WL 2695292, at *3 (D. Nev. June 22, 2017) (emphasis added). Put differently, even if a party meets the test to compel disclosure of opinion work product, this showing does not provide a legal basis for piercing the attorney-client privilege. *Id.*

1   (citing *Siddall v. Allstate Ins. Co.*, 15 Fed. Appx. 522, 522 (9th Cir. Aug. 1, 2001) (unpublished

2   memorandum)). In sum, "although the work product doctrine may not protect the attorney's

3   mental impressions and opinions from being discovered in a bad faith action, they may still be

4   protected under the attorney-client privilege." *Id.*

5           Post-*Spargo* opinions in this district have further clarified the often-muddled overlap

6   between opinion-work-product privilege and attorney-client privilege. *See Wood v. Nautilus Co.*,

7   No. 2:17-cv-02393-MMD-DJA, 2021 WL 5415330 (D. Nev. Nov. 18, 2021). In *Wood*, then-

8   Chief District Judge Miranda Du explained that while the work-product doctrine may protect the

9   determinations of an insurer's attorney, "discovery of an insurer's attorney's mental impressions

10  requires waiver of the attorney-client privilege." *Id.* at *3–4; *see also Torgerson v. State Farm*

11  *Mut. Auto. Ins. Co.*, No. 3:21-cv-00452-LRH-CSD, 2023 WL 6807111, at *4 (D. Nev. Oct. 16,

12  2023). It follows here that the work-product doctrine *may* protect material involving the mental

13  impressions of Mr. Canfield in which the attorney-client privilege never attached or was

14  impliedly waived. But Plaintiffs cannot use the exceptions to the work-product doctrine to pierce

15  materials involving Mr. Canfield's mental impressions that this Court has already determined are

16  protected by the attorney-client privilege.

17          Here, many of the documents in the second-amended privilege log are not work product.

18  As discussed above, the Court will not consider whether the attorney-client privileged materials

19  are also protected under the work-product because Plaintiffs cannot pierce the attorney-client

20  privilege under the work-product exceptions. Additionally, the following groups of materials are

21  not protected work product because they were not prepared in anticipation of litigation. *See* Fed.

22  R. Civ. P. 26(b)(3)(A)–(B); *see also Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573,

23  576 (9th Cir. 1992) (requiring documents to be prepared in anticipation of litigation to qualify as

24  work product).

25          • SMIC 003292–003306. This is an ISO Claim Search Report. The information in

26              the document suggests that it was run on February 4, 2022. SMIC 3299. Litigation

27              was not imminent at this point. According to the claim file, on December 13, 2022,

28              Mr. Canfield told Defendant that he expected Plaintiffs would eventually file a

suit. And it was not until November 30, 2023, that Mr. Canfield told Defendant Plaintiffs were filing suit. Because this document was created at least ten months before Defendant would have been remotely aware of Plaintiffs' intention to file suit, it was not created in anticipation of litigation and is not work product.

- SMIC 003312–003336. This is a copy of the insurance policy and amendatory endorsement. This was not prepared in anticipation of litigation, so it is not work product.

- SMIC 003338–003349. These documents contain Dr. Schifini's curriculum vitae, fee schedule, and testimony list. These were not prepared in anticipation of litigation. Dr. Schifini likely created these documents for his business as a medical expert. These documents are not work product.

- SMIC 003351–003392. These documents contain a discovery commissioner's report and recommendations regarding a party's motion to quash subpoena duces tecum to Dr. Schifini and a transcript of a deposition in which Dr. Schifini testified. This was not prepared in anticipation of litigation, so it is not work product.

- SMIC 005702–5794, 005895–005954,  006309–006379, 006385–006460, SMIC 004598–005169, SMIC 006476–6488, SMIC 005626–005627, SMIC 006380. These are all documents that Plaintiffs already possess or materials reflecting documents or information that Plaintiffs already possess (Dr. Schifini's medical reports, Plaintiffs' rebuttal medical reports by Dr. Campbell, Plaintiffs' own medical records, the Complaint in this case). So, these materials are not work product.

This leaves one group of materials left: emails between Mr. Canfield and/or his paralegal and Defendant in which the primary purpose of the communication or document was claims handling rather than legal advice. According to the documents submitted for *in camera* review, Defendant first had reason to believe that Plaintiffs would file a suit on December 13, 2022. SMIC 005696 ("I would assume suit may follow . . . ."). Rule 26 protects materials that were

1   created because of anticipated litigation. *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th

2   Cir. 2004). The rule for claim files is no different. *See Century-Nat'l Ins. Co. v. Gardner*, No.

3   2:18-cv-02090-APG-BNW, 2019 WL 8128167, at *3 (D. Nev. Sept. 20, 2019). While claim files

4   "generally do not constitute work product in the early stages of a claims investigation," they are

5   protected "once litigation is imminent." *Abueg v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-cv-

6   00635-GMN-GWF, 2014 WL 5503114, at *4 (D. Nev. Oct. 30, 2014). (internal citations

7   omitted).

8          Here, the materials in this group that were created before December 13, 2022, are not

9   work product because Defendant did not anticipate litigation at this point. *See* Fed. R. Civ P.

10  26(b)(3)(B); *see also Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.

11  1992) (requiring documents to be prepared in anticipation of litigation to qualify as work

12  product). These documents include: SMIC 003271–003275, SMIC 003337, SMIC 004596–

13  004597, SMIC 005628–005631, SMIC 005696–005697, SMIC 003394–003398, SMIC 004592,

14  SMIC 005170–005172, and SMIC 005632.

15         Conversely, the following documents were created after December 13, 2022, when

16  Defendant could reasonably anticipate litigation:

17         •   SMIC 005893–005894, SMIC 006100–006103, 006308, 6384. These are

18             communications, dated between August and October of 2023, from Mr. Canfield's

19             paralegal to Defendant, in which the paralegal states that Dr. Schifini's

20             supplemental expert reports and Plaintiffs' medical records are attached. These

21             documents are dated after Defendant might anticipate litigation but before

22             Plaintiffs filed suit. *See* ECF No. 1-1 (complaint dated December 8, 2023). It is

23             unclear from these communications alone whether they were created in

24             anticipation of litigation, and it is feasible that these supplemental expert reports

25             were *not* created because of litigation but rather in the ordinary course of claims

26             handling because they deal with expert reports and medical records. So, based on

27             the information and argument before it, this Court cannot fairly say that these

28             documents "would not have been created in substantially similar form but for the

1   prospect of that litigation." *See In re Grand Jury Subpoena*, 357 F.3d 900, 908

2   (9th Cir. 2004). As such, these documents are not work product and will be

3   disclosed.

4   • SMIC 003277. This document contains claim-file entries dated between February

5   and June of 2023, which is after Defendant anticipated litigation but before

6   Plaintiffs filed suit. The entries discuss how Plaintiffs' counsel is working on

7   counter demands. This note was likely *not* created because of litigation but rather

8   in the ordinary course of claims handling because it is making a record of

9   Plaintiffs' counter demands. So, this Court cannot fairly say that this document

10   "would not have been created in substantially similar form but for the prospect of

11   that litigation." *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004).

12   As such, SMIC 003277 is not work product and will be disclosed.

13   • SMIC 003283 contains only one claim-file entry, and it is dated after Plaintiffs

14   filed suit. The entry relates to the suit and therefore can fairly be said to have been

15   created because of litigation. Additionally, SMIC 003283 does not contain the

16   mental impressions, opinions, etc. of Mr. Canfield and/or Defendant, and thus is

17   not opinion-work product. To discover this document, Plaintiffs must show that

18   they have a "substantial need for the materials to prepare its case and cannot,

19   without undue hardship, obtain their substantial equivalent by other means." Fed.

20   R. Civ. P. 26(b)(3)(A)(ii). Here, Plaintiffs cannot meet this showing because the

21   entry does not contain information for which Plaintiffs have a substantial need.

22   This document will remain protected as ordinary work product.

23   • SMIC 003276 contains claim-file entries dated after December 13, 2022, but

24   before Plaintiffs filed suit. Some of the entries discuss communications between

25   Mr. Canfield and Defendant that this Court previously found were not protected by

26   the attorney-client privilege because the primary purpose of the communications

27   was claims handling. However, because these entries were made after Defendant

28   anticipated litigation and because they contain discussions of a potential suit,

SMIC 003276 is work product. Moreover, this document contains the strategy of Defendant concerning potential litigation. Therefore, it is opinion-work product. To discover this document, Plaintiffs must show that the mental impressions are at issue and the need for the material is compelling. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Here, the strategy of Defendant is directly at issue because it is an insurance case involving bad-faith claims. *See id.* Additionally, Plaintiffs' need for this evidence is compelling because the Court is unaware of where else they might discover this information. In sum, SMIC 003276 is not protected by the work-product privilege and will be disclosed.

- SMIC 003278–003281 contains claim-file entries dated after December 13, 2022, but before Plaintiffs filed suit. The Court previously held that some of the entries in these documents were protected by the attorney-client privilege. The remaining entries, however, may be protected under the work-product doctrine. The non-attorney-client privileged entries in SMIC 003278–003281 mostly summarize Plaintiffs' updated medical records and bills and Plaintiffs' counteroffers. These entries constitute information created in the ordinary course of claims handling rather than because of litigation. So, this Court cannot fairly say that these documents "would not have been created in substantially similar form but for the prospect of that litigation." *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). As such, the non-attorney-client privileged portions of SMIC 003278–003281 are not work product and will be disclosed.

- SMIC 003282 contains claim-file entries dated after December 13, 2022, but before Plaintiffs filed suit. The Court previously held that some of the entries in these documents were protected by the attorney-client privilege. The remaining entries, however, may be protected under the work-product doctrine. Here, the non-attorney-client privileged entries in SMIC 003282 explicitly anticipate suit being filed. Moreover, the claim entries reflect the mental impressions and

1    conclusions of Defendant concerning potential litigation. Therefore, SMIC 003282

2    is opinion-work product. To discover this document, Plaintiffs must show that the

3    mental impressions are at issue and the need for the material is compelling. *See*

4    *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

5    Here, the strategy of Defendant is directly at issue because it is an insurance case

6    involving bad-faith claims. *See id.* Additionally, Plaintiffs' need for this evidence

7    is compelling because the Court is unaware of where else they might discover this

8    information. In sum, the non-attorney-client privileged entries in SMIC 003282 are

9    not protected by the work-product privilege and will be disclosed.

10   **III.    CONCLUSION**

11            IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel (ECF No. 15) is

12   GRANTED in part and DENIED in part consistent with the above.

13            IT IS FURTHER ORDERED that Defendant must produce the following documents to

14   Plaintiffs within 21 days of entry of this order: SMIC 003271, SMIC 003275–003277, SMIC

15   003292–003306, SMIC 003312–003398, SMIC 004592, SMIC 004596–005169, SMIC 005170–

16   005172, SMIC 005626–005632, SMIC 005696–005697, SMIC 005702–005794, SMIC 005893–

17   005954, SMIC 006100–006103, SMIC 006308–006380, SMIC 006384–006460, SMIC 006476–

18   006488. Before producing these documents, however, Defendant must review them and redact

19   any personal-data identifiers. *See* LR IC 6-1.

20            IT IS FURTHER ORDERED that Defendant must produce the following documents,

21   consistent with the Court's redactions, to Plaintiffs within 21 days of entry of this order: SMIC

22   003272–003274 and SMIC 003278–003282. After this Order is filed on the docket, the Court will

23   provide Defendant a copy of these documents with the ordered redactions via email. Defendant

24   must produce these redacted documents to Plaintiffs with the above materials.

25   / /

26   / /

27   / /

28   / /

1       IT IS FURTHER ORDERED that the following documents will remain privileged: SMIC

2 003283–003291, SMIC 003307–003311, SMIC 005698–005701, SMIC 005890–005892, SMIC

3 005955–005958, SMIC 006381–006383, SMIC 006461–006475.

4

5       DATED this 29th day of January 2025.

6

7 _____

8 BRENDA WEKSLER
  UNITED STATES MAGISTRATE JUDGE